IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Darryl T. Cook,                          )        C/A No. 0:15-2987-JFA-PJG
                                         )
                Petitioner,              )
                                         )
vs.                                      )        **REPORT AND RECOMMENDATION**
                                         )
                                         )
Warden of Broad River Correctional       )
Institution,                             )
                                         )
                Respondent.              )
_____  )

Petitioner Darryl T. Cook, a self-represented state prisoner, filed this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the respondent's motion for summary judgment. (ECF No. 19.) Pursuant to <u>Roseboro v. Garrison</u>,

528 F.2d 309 (4th Cir. 1975), Cook was advised of the summary judgment and dismissal procedures

and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF

No. 20.) Cook filed a response in opposition to the respondent's motion (ECF No. 35), the

respondent replied (ECF No. 37), and Cook filed a sur-reply[1] (ECF No. 41). Having carefully

considered the parties' submissions and the record in this case, the court concludes that the

respondent's motion for summary judgment should be granted and Cook's Petition denied.

## BACKGROUND

Cook was indicted in January 2002 in Fairfield County for armed robbery and grand larceny

(2002-GS-20-132). (App. at 1315-16, 1321-22; ECF No. 18-5 at 318-19, 324-25.) Cook was

---

[1] The Local Civil Rules for the District of South Carolina make no provision for sur-replies.



additionally indicted in November 2002 in Fairfield County for murder (2002-GS-20-546). (App. at 1310-11, ECF No. 18-5 at 313-14.) During January 2006 in Fairfield County, Cook's indictments were amended. (App. at 1308-09, 1313-14, 1319-20; ECF No. 18-5 at 311-12, 316-17, 322-23.) Cook was represented by Jack B. Swerling, Esquire, and on October 15-23, 2007 was tried by a jury and found guilty as charged. (App. at 1055, ECF No. 18-5 at 58.) The circuit court sentenced Cook to forty-five years' imprisonment for murder, twenty-five years' imprisonment for armed robbery, and five years' imprisonment for grand larceny, all sentences to be served concurrently. (App. at 1075, ECF No. 18-5 at 78.)

Cook timely appealed and was represented by Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense, who filed an Anders[2] brief on Cook's behalf that raised the following issue:

> Whether the court erred by allowing evidence appellant, as a thirteen-year-old child, stole money from a gas station in 1996, where the murder occurred at the gas station five years later, since this incident was too remote in time to the 2001 murder, its unduly prejudicial effect outweighed its probative value under Rule 403, SCRE and it had the very real tendency to confuse the jury?

(ECF No.18-7.) Cook filed a *pro se* response to the Anders brief in which he raised the following arguments, quoted verbatim:

I.    Appellant contends that the testimony of Robert McDuffie and Anthony Green should have been stricken from the record.

---

[2] Anders v. California, 386 U.S. 738 (1967). Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. Anders, 386 U.S. at 744.



II.    Did counsel for Appellant neglect to cross-examing expert witness deny this
Appellant effective assistance of counsel?

III.    Did the trial judge err by allowing the playing of video tape known to have
been tampered with by the decease's daughter?

(ECF No. 18-10) (errors in original).  On January 25, 2010, the South Carolina Court of Appeals

dismissed Cook's appeal.  (State v. Cook, Op. No. 2010-UP-023 (S.C. Ct. App. Jan. 25, 2010), App.

at 1078-79, ECF No. 18-5 at 81-82.)  The remittitur was issued February 10, 2010.  (ECF No. 18-

11.)

Cook filed a *pro se* application for post-conviction relief ("PCR") on November 8, 2010 in

which he raised the following claims, quoted verbatim:

(a)    Ineffective Assistance of Counsel
Counsel refused to subpoena witness on my behalf.  Counsel refused
to asked questions I wanted him to.

(b)    Insufficientt Evidence to Support the Murder
The trial judge allowed evidence that didn't pertain to the actually crime to
be used as evidence to gain a conviction

(c)    Exclusion of Relevant Evidence
The presiding trial judge refused to let certain statements that could have
been extremely creditable on my behalf for a new trial.

(See Cook v. State of South Carolina, 2010-CP-20-453; App. at 1080-86, ECF No. 18-5 at 83-89.)

The State filed a return.  (App. at 1087-91, ECF No. 18-5 at 90-94.)  Cook, through counsel Glenn

E. Bowens, Esquire, filed an amended PCR application on July 15, 2013 in which he raised the

following claims:

(a)    Counsel refused to subpoena witnesses on my behalf.

(b)    Counsel did not object to comments and instructions given by the trial judge
to the jury when the jury came back indicating they were deadlocked.



     (c)      Counsel did not object to the trial judge sending the jury back to deliberate after the jury indicated they were deadlocked a second time.

     (d)      Counsel did not assert as a defense that Mr. McGuirt's death, which occurred over a year after the shooting, was due to the negligent medical care he received.

(App. at 1093, ECF No. 18-5 at 96.)  On August 7, 2013, the PCR court held an evidentiary hearing at which Cook appeared and testified and continued to be represented by Glenn Bowens, Esquire. The PCR court held the record open for sixty days to allow for deposition testimony and further briefing.  By order filed April 14, 2014, the PCR court denied and dismissed with prejudice Cook's PCR application.  (App. at 1294-307, ECF No. 18-5 at 297-310.)

On appeal, Cook was represented by Carmen V. Ganjehsani, Esquire, with the South Carolina Commission on Indigent Defense, who filed a Johnson[3] petition for a writ of certiorari that presented the following issue:

> Whether the PCR court erred in finding that trial counsel provided effective assistance of counsel where trial counsel failed to preserve for appellate review an objection to the Trial Court's unconstitutionally coercive Allen[] charge?

(ECF No. 18-13.)  On May 7, 2015, the South Carolina Supreme Court issued an order denying Cook's petition for a writ of certiorari.  (ECF No. 18-14.)  The remittitur was issued on May 26, 2015.  (ECF No. 18-15.)  This action followed.

---

[3] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).



## FEDERAL HABEAS ISSUES

Cook's federal Petition for a writ of habeas corpus raises the following issues, quoted

verbatim:

**Ground One:** Trial counsel provided effective assistance of counsel where trial counsel failed to perserve for appellate review an objection to the trial court's unconstitutionally coercive Allen charge.

**Supporting Facts:** The jury initially returning from deliberations and announcing they were deadlocked. The jury returned a second time indicating they were still deadlocked, at 7 to 5, and the trial then gave a coercive Allen charge. Twenty to twenty-five minutes later the jury returned with a guilty verdict. The jurors, Charles Walker, Teresa Kennedy, and Raymond Pearson, gave evidence they were coerced and pressured into a verdict that evening by the trial judge's coercive Allen charge, even though they personally never thought Darryl Cook committed the murder.

**Ground Two:** Appellant contends that the testimony of Robert McDuffie and Anthony Green should have been stricken from records, since both parties trial testimony were inconsistent and far-fetched.

**Supporting Facts:** The declarants in this case, Anthony Green and Robert McDuffie statements should not have been allowed as evidence presented to the jury. The declarants testimony were heresay and does not meet any exceptions to the heresay exceptions. The declarants committed perjury by fabricating events that did not occur. These fabrications did prejudice the defendant because the declarants' testimony heavily influenced the jurors' determination in rendering a guilty verdict thereby denying defendant of a constitutional fair trial under the U.S. Constitution

**Ground Three:** Counsel for petitioner neglect to cross expert witness which denied this applicant effective assistance of counsel

**Supporting Facts:** Counsels' failure to cross-examine Dr. Thomas, or to secure an independent medical expert, in order to clarify to the jury that the infection and medication reaction is the cause of death that killed the victim, and this stemmed from the malfunctioning catheter medical device which is independent, seperate and apart from the gunshot wound the victim sustained. Counsel's failure is not reasonable trial strategy and deprived the defendant rebuttal defenses at trial.

**Ground Four:** Trial judge erred by allowing playing of video tape known to have been tampered with by the decease's daughter

**Supporting Facts:** The Petitioner's Due Process rights and rights to a fair trial were violated when an unauthenticated and altered videotape was admitted into the trial as evidence to prove elements alledged in the indictment. The videotape was unconstitutionally used as evidence of prior bad acts, as character evidence, as



identity evidence, as absence of mistake, and as motive evidence when such videotape actions were those of a child and are irrelevant and does not meet any constitutional evidence exceptions.

**Ground Five:**  The court erred by allowing evidence of appellant, as a thirteen-year-old child, stole money from a gas station in 1996, where the murder occured at the gas station five years later, since this incident was too remote in time to the 2001 murder, it's unduly prejudicial effort outweighed it's probative value Rule 403, SCRE and it had the very real tendency to confuse the jury.

**Supporting Facts:**  Petitioner's Due Process right and rights to a fair trial were violated when evidence of appellant, as a thirteen-year old child stole money from a gas station in 1996, was unconstitutionally used as evidence of prior bad acts, as character evidence, as identity evidence, as absence of mistake evidence, and as motive evidence where no foundation was laid by the prosecution to sustain the admittance under any exceptions of the rules of evidence.  Its admissions were irrelevant and prejudicial and outweigh any probative value such that it infringed on Petitioner right to fair trial and Due Process under the U.S. Constitution.

**Ground Six:**  Trial counsel ineffective for failing to perserve for review the issue of missing trial record and it's impact on the appellate review and collateral review of petitioner's case.

**Supporting Facts:**  There are missing portions of the trial proceedings which were not transcribed to the record of this trial.  The missing portions bear directly upon material factual events which substantiate meritous appellate grounds which warrant a new trial.  Counsels Jack Swerling, Kelly Switzer, and Robert Dudek failed to protect Petitioner's Due Process rights and appellate rights under the U.S. Constitution.

**Ground Seven:**  Trial counsel ineffective for failing to perserve for review the issue of several impartial jurors.

**Supporting Facts:**  This trial's jurors were not impartial in their evaluation of the evidence and in their determination of the evidence and in their determination of guilt such that their resolution of Petitioner's guilt or innocence was tainted and their finding of guilty was unconstitutionally less than by the mandated "beyond a reasonable doubt standard." The trial counsels Jack Swerling and Kelly Switzer were deficient and their deficiency prejudiced the Petitioner under Strickland's two-prong analysis.

**Ground Eight:**  The South Carolina state courts failed to conduct a full <u>Strickland</u> ineffective assistance of counsel examination on the performance of trial counsels Jack B. Swerling and Kelly Switzer.  The South Carolina state courts applied <u>Strickland</u> onto Jack B. Swerling's performance but remained silent in its <u>Strickland</u> examination of co-counsel Kelly Switzer.  Such a examination is contrary to and is



an unreasonable application of <u>Strickland v. Washington</u> holdings.  This is a Due
Process violation.

**Supporting Facts:**  The trial counsels Jack B. Swerling and Kelly Switzer were the
counsels on this trial.  My ineffective assistance of counsel claims at the stage are
against these two attorneys under the <u>Strickland</u> and <u>Cronic</u> standards.  I did not
waive any review of these attorneys' performance under the U.S. Constitution.

(Pet., ECF No. 1) (errors in original).

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine

dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing

to particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary

judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.

<u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."

<u>Id.</u> at 248.



The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear



error will not suffice") (internal quotation marks and citation omitted); <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011); <u>Humphries v. Ozmint</u>, 397 F.3d 206 (4th Cir. 2005); <u>McHone v. Polk</u>, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 562 U.S. at 101 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)); <u>see also</u> <u>White</u>, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting <u>Harrington</u>, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. <u>Harrington</u>, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. <u>See id.</u> at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. <u>Id.</u> Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States



Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by



a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.     Summary Judgment Motion**

**1.     Claims that are Not Cognizable**

In Ground Two of the Petition, Cook argues that testimony from two of the defense witnesses should have been stricken from the record because their testimony was inconsistent and far-fetched. In Ground Four, Cook argues the trial court erred by allowing an unauthenticated and altered videotape to be played in front of the jury. In Ground Five, Cook argues the trial court erred by admitting evidence that he had stolen money from a gas station five years prior to the murder. In Ground Eight, Cook argues the PCR court analyzed his ineffective assistance of counsel claims against only one of his attorneys, even though he had two attorneys at trial. The respondent argues these four claims are not cognizable in a federal habeas corpus action. The court agrees.

A district court may only entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). Grounds Two, Four, and Five raise issues of state evidentiary law, which do not present cognizable federal habeas corpus claims, even where, as here, the petitioner has attempted to couch his claims as denials of due process. See Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000) ("In federal habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings



were so extreme as to result in a denial of a constitutionally fair proceeding."); Spencer v. Murray, 18 F.3d 237, 239-40 (4th Cir. 1994) (finding that a habeas petitioner's claim that DNA evidence was unreliable in his state criminal proceeding did not state a federal claim under § 2254(a), even construing the claim as a denial of due process).  Accordingly, these issues are not cognizable in a federal habeas court, absent a showing of extraordinary circumstances, which Cook has not demonstrated.

    As to Ground Eight, Cook fails to state a cognizable claim because complaints about alleged defects in collateral review proceedings and procedures are not cognizable in a federal habeas action. See § 2254(a); Lawrence, 517 F.3d at 717 ("A state prisoner has no federal constitutional right to post-conviction proceedings in state court . . . .  Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself.") (citing Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir.1988)).  Cook's claim involves issues related to the proceeding in which he collaterally attacked his conviction, rather than the proceedings that have culminated in his detention. Accordingly, Cook's claim of errors in his PCR proceeding is not cognizable.

### 2.    Claims that are Procedurally Barred

    In Ground Three of the Petition, Cook argues trial counsel was ineffective for failing to cross-examine an expert witness or for failing to secure an independent expert witness.  In Ground Six, Cook argues trial counsel was ineffective because the trial transcript is missing a portion of the proceedings that is material to his direct appeal and collateral review issues.  In Ground Seven, Cook argues trial counsel was ineffective for failing to preserve for appellate review the issue of partial

jurors being impaneled. The respondent argues these three claims are procedurally barred because they were not raised in state court. The court agrees.

These claims were not raised to or ruled on by the PCR court. Consequently, they were not preserved for appellate review in the South Carolina Supreme Court. See Plyler v. State, 424 S.E.2d 477, 478 (S.C. 1992) (stating issues not raised to and ruled on by the PCR court are not preserved for review on appeal). Further, because these claims were barred on independent and adequate state procedural rules, they are procedurally barred from federal habeas review. See Lawrence, 517 F.3d at 714. Moreover, Cook does not assert that he can demonstrate cause to excuse the procedural bar, or actual prejudice resulting therefrom. See Coleman, 501 U.S. at 750. Accordingly, the court finds that Grounds Three, Six, and Seven of the Petition are procedurally barred from federal habeas review.

### 3.    Claims of Ineffective Assistance of Counsel

In Ground One of the Petition, Cook argues trial counsel was ineffective because he failed to object to the trial court's unconstitutionally coercive Allen charge and preserve the issue for appellate review.

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland, that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness



guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Cook's petition. Therefore, the court turns to the question whether the PCR court's order unreasonably misapplied



federal law or was based on an unreasonable determination of the facts.  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the <u>Strickland</u> test in determining that no Sixth Amendment violation occurred.

At trial, the jury began deliberations at 2:02 p.m.  (App. at 1051, ECF No. 18-5 at 54.)  The jury sent two questions to the trial court and re-entered the courtroom at 3:08 p.m. to receive the answers.  (App. at 1053, ECF No. 18-4 at 56.)  After the court answered the questions, the trial transcript reflects the following:

(WHEREUPON, the jury left open court at approximately 3:10 p.m.)

THE COURT:  Stand at ease.

[Solicitor]:  Yes, sir.

THE COURT:  Court will be at ease.

(Pause).

Bring the jury.

[Solicitor]:  We don't have Mr. Swerling yet.

THE DEPUTY:  Yes, we do.

(WHEREUPON, the jury returned to open court with the verdict at 8:10 p.m.)

(App. at 1054, ECF No. 18-5 at 57.)  The trial transcript does not appear to be missing any pages. There is no indication in the transcript that the jury returned to the courtroom between 3:10 p.m. and 8:10 p.m, that the jury was deadlocked, or that an <u>Allen</u> charge was given.[4]

At the PCR hearing, Cook testified that the jury returned to the courtroom around 6:00 p.m. or 7:00 p.m. and indicated that they were deadlocked.  (App. at 1138, ECF No. 18-5 at 141.)  He testified that the jury returned an hour or two later and indicated that they were still deadlocked, and the trial court told the jury, "We had two mistrials, we are not going to have a third one so y'all have got to go back there and come up with a verdict.  We will be here until you come back with a verdict whether it take[s] all night or not.  And y'all checks have been cut, the Clerk of Court . . . is waiting to go get them when you walk out the door so y'all come back."  (<u>Id.</u>) (errors in original).  Cook testified that the jury returned a verdict twenty to twenty-five minutes after the trial court's admonition.  (<u>Id.</u>)  He further testified that trial counsel did not object to the trial court's comments. (App. at 1139, ECF No. 18-5 at 142.)

Cook's mother, father, and grandmother, who were present at the trial, also testified at the PCR hearing and gave similar testimony indicating that the jury was deadlocked and that the trial court admonished the jury to return a verdict.  Cook's mother testified that the jury came back twice indicating they were deadlocked.  (App. at 1120, ECF No. 18-5 at 123.)  She testified that the first time the jury returned, the trial court told the jury that the case had already resulted in a mistrial before and they needed to go back to deliberating and "get the verdict right."  (<u>Id.</u>)  She testified that

---

[4] At the PCR hearing, the State asserted that the trial transcript is a complete record of everything that occurred during the trial.  (App. at 1114-15, ECF No. 18-5 at 117-18.)  Cook responded that a portion of the transcript was missing, and he intended to present evidence of what occurred at trial between 3:10 p.m. and 8:10 p.m.  (App. at 1117-19, ECF No. 18-5 at 120-22.)



the second time the jury returned deadlocked the trial court told the jury again there had already been

a mistrial; there was not going to be another mistrial; and that they would received their checks,

which had already been cut, when they returned with a verdict.  (Id.)  She further testified that the

trial court told the jury that there was no option of leaving for the day and coming back the next day,

and that they would have to stay all night because the trial needed to be resolved.  (App. at 1121,

ECF No. 18-5 at 124.)  She testified that trial counsel did not object to the trial court's comments

to the jury.  (App. at 1121-22, ECF No. 18-5 at 124-25.)

Cook's father testified that the jury returned and indicated that they were deadlocked at seven

to five.  (App. at 1128, ECF No. 18-5 at 131.)  He testified the trial court sent the jury back to

deliberate, telling them that they had to come up with a verdict and that the "check was already made

out."  (Id.)  He also testified that the trial court told the jury that there would not be another mistrial

and that they would have to stay there all night.  (App. at 1129, ECF No. 18-5 at 132.)  He testified

the jury returned in less than twenty minutes after that with a verdict.  (Id.)  He further testified that

trial counsel did not object to the trial court's statements to the jury.  (App. at 1130, ECF No. 18-5

at 133.)

Cook's grandmother testified that the jury returned deadlocked at seven to five, the trial court

sent them back to deliberate further, and the jury came back deadlocked again.  (App. at 1133, ECF

No. 18-5 at 136.)  She testified the trial court sent the jury back to deliberate again and told the jury

that there would be no hung jury or mistrial, they would stay there all night to get a verdict, and the

checks were already made.  (Id.)  She testified the jury returned with a verdict in a short time after

that.  (App. at 1134, ECF No. 18-5 at 137.)  She further testified that trial counsel did not object to

the trial court's comments to the jury.  (Id.)



Trial counsel testified that he had no independent recollection of the jury coming back into the court room and claiming they were deadlocked. (App. at 1168, ECF No. 18-5 at 171.) However, he testified that on the last page of his notes from trial, he wrote down that at 5:30 there was an <u>Allen</u> charge and the jury was deadlocked at five to seven. (App. at 1169, ECF No. 18-5 at 172.) He testified his notes further indicate that he explained to Cook what an <u>Allen</u> charge was, and that they both agreed they needed to push for a verdict because "the case won't get any better than it is right now." (<u>Id.</u>) However, he testified that nothing in his notes indicated the jury came back into the courtroom after 5:30, and he did not remember the jury coming back deadlocked a second time. (App. at 1169-70, ECF No. 18-5 at 172-73.)

Trial counsel testified that had the jury come back deadlocked a second time, based upon his experience, he would have objected to the jury going back to deliberate a third time unless they stated that further deliberations could result in a verdict. (App. at 1170, ECF No. 18-5 at 173.) Trial counsel also testified that "there's no judge that I know of that would say that there's been two mistrials in this case, that's just not going to happen," and had the trial court made those comments, he would have objected and moved for a mistrial. (<u>Id.</u>) Trial counsel further testified that he knew what an appropriate <u>Allen</u> charge was and if the trial court's charge had exceeded proper boundaries of the <u>Allen</u> charge, he would have objected. (App. at 1170, 1178; ECF No. 18-5 at 173, 181.) He also testified that the allegations that the trial court told the jury they were not leaving until they reached a verdict or that the checks were already cut were "just not true," and he would have objected to such statements had they been made. (App. at 1178, 1180-81; ECF No. 18-5 at 181, 183-84.)



Cook informed the PCR court that he subpoenaed a juror from his trial, Charles Walker, to testify at the PCR hearing, but he never appeared.  (App. at 1147, ECF No. 18-5 at 150.)  The PCR court held the record open so that Walker could be deposed.  (App. at 1151, ECF No. 18-5 at 154.) In his deposition, Walker testified the jury was deadlocked seven to five, and when they went into the courtroom, the trial court told them they were not going to leave until they reached a verdict, there was not going to be a hung jury, and the checks were cut and the jurors would get them "on the way out after we reached a verdict."  (App. at 1271-72, ECF No. 18-5 at 274-75.)  He testified he felt that there was not enough evidence to convict Cook of murder, and "the combination of pressure to reach the verdict and feeling that [Cook] knew who did commit the murder led me to change my vote to guilty." (App. at 1272-73, ECF No. 18-5 at 275-76.) On cross-examination, Walker admitted that the first time he admitted to anyone that he felt coerced into rendering a guilty verdict was when, while working at Walmart, he spoke to Cook's father when he came to the store.  (App. at 1276, ECF No. 18-5 at 279.)  He further testified that he did not seek out PCR counsel on his own to volunteer that he felt coerced into voting guilty at trial.  (App. at 1278-79, ECF No. 18-5 at 281-82.)  He also testified, "[A]fter speaking with his father, you know, that kind of enlighten me more of how I felt that night."  (App. at 1279, ECF No. 18-5 at 282.)

The PCR court found Cook failed to meet his burden of proof to establish that trial counsel was ineffective.  The court found that trial counsel's testimony was most credible in light of the testimony presented and trial counsel's "expansive career and experience in criminal defense."[5] (App. at 1304, ECF No. 18-5 at 307.)  On the other hand, the court found the deposition testimony

---

[5] At the PCR hearing, trial counsel testified he had been practicing law since 1973, mostly in criminal law, and he had tried "dozens" of murder cases and dozens of other kinds of felony and misdemeanor cases in state and federal court.  (App. at 1157, ECF No. 18-5 at 160.)



of Walker regarding his recollection of the alleged coercive comments by the trial court to not be credible, especially in light of his connection with Cook's father. The court also found that the testimony of Cook's family lacked credibility because of their vested interest in seeing Cook released from prison. The PCR court found as a matter of fact that the trial court did not make any improper comments to the jury during their deliberations; nor did it improperly send the jury to deliberate a third time. The PCR court found that it was more likely than not that Cook and his family, after more than six years since the trial, recalled the trial court's comments differently from what actually occurred.[6] The PCR court found, based on the combination of trial counsel's experience and credibility, the record indicating that trial counsel made various and numerous motions and objections during the trial, and the fact that this issue was never discussed with trial counsel by Cook or his family following the trial, that Cook failed to meet his burden of establishing that trial counsel was ineffective.

The court finds that the PCR court's decision is not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented at the hearing. The purported missing section of the trial transcript in this case posed a unique challenge to Cook. Normally, on collateral review, applicants have a full and accurate trial transcript reflecting the events at trial. However, it appears that in Cook's trial, if an Allen charge was given to the jury, it was not recorded by the court reporter. Otherwise, the trial transcript merely reflects that after deliberating for approximately one hour, the jury sent two

---

[6] The PCR court noted that, in regard to testimony that the trial court told the jury their checks were already made and would be collected following the verdict, the trial court did state on the record *after* the verdict that, "This will conclude your jury service for this term and for the next three years, and I thank all [sic] very much. The Clerk has a huge check for each one of you." (App. at 1076, 1304-05; ECF No. 18-5 at 79, 307-08.)



questions to the trial court, returned to the courtroom to receive the answers, and returned to deliberate for another five hours before reaching a verdict. Accordingly, the burden was on Cook as the applicant to prove by a preponderance of the evidence that an <u>Allen</u> charge was given and that it was unduly coercive.[7] <u>See</u> SCRCP 71.1(e); <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985) ("The burden of proof is on the Applicant in post-conviction proceedings to prove the allegations in his application."). The PCR court reasonably found Cook did not overcome that burden, reasoning that such a finding would require "great speculation." (App. at 1305, ECF No. 18-5 at 308.)

Moreover, because the PCR court found that the trial court did not make any improper comments to the jury during their deliberations and that it did not improperly sent the jury to deliberate a third time, (App. at 1305, ECF No. 18-5 at 308), Cook has the burden on federal habeas review of the PCR court's decision to rebut the PCR court's factual finding by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 358 (2003) ("[Section] 2254(e)(1) establishes a presumption of correctness. It requires that the federal habeas court assume the state court that entered the findings was the best placed factfinder with the most complete record and only then ask whether the petitioner can refute that factual finding by clear and convincing evidence."). The court finds that Cook has not presented clear and convincing evidence here to rebut the presumption of correctness of the PCR court's factual findings. Cook failed to assert any facts that would tend to show that the PCR court's decision is clearly erroneous. Moreover, the PCR court's finding that the trial court did not make coercive statements to the jury is entitled to deference by this court because it is supported by trial counsel's testimony at the PCR hearing, which the PCR

---

[7] <u>See</u> <u>generally</u> <u>Dawson v. State</u>, 572 S.E.2d 445, 448 (S.C. 2002) (discussing the factors for determining whether an <u>Allen</u> charge is unconstitutionally coercive).



court found was more credible than the other evidence presented.  See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010)).  Accordingly, the court finds that the PCR court's decision is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment be granted (ECF No. 19) and Cook's Petition be denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 14, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).